IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT GODFREY GRIER | ) | CASE NO. 5:12CV0257 |
| | ) | |
| Petitioner, | ) | JUDGE GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| RICHLAND COUNTRY | ) | |
| CORRECTIONAL INSTITUTION, | ) | |
| Warden | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Robert Godfrey Grier ("Grier") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254 on February 2, 2012.  Grier is in the custody

of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of

sentence in the case of *State of Ohio vs. Grier*, Case No. 2010CR0653 (Stark County

2010).  For the reasons set forth below, Grier's petition should be dismissed with

prejudice.

I.

The state appellate court reviewing Grier's conviction during his direct appeal

found the following facts to be relevant to his case:

{¶ 2} The events at issue center on a disrupted undercover drug buy on May 6,
2010 on the near west side of Canton.  At about 7:50 PM that evening, Detective

Zachary Taylor of the Canton Police Department was working an investigation in an unmarked pickup truck near Newton Place NW when he was approached by appellant.  A brief conversation ensued, during which Taylor asked appellant what he had to sell.  Appellant then jumped into the front passenger seat and directed Taylor to drive around the downtown area.  Appellant pulled out a clear plastic bag at one point, but Taylor could not see what was in it.  Eventually, appellant told Taylor to pull into a secluded alley near Eighth Street and Shorb Avenue NW. Appellant also told Taylor to shut off the lights and engine; however, the officer left the engine running.  Unbeknownst to Taylor, his monitoring equipment had malfunctioned, and back-up officers had lost his exact location.

{¶ 3} Appellant then asked Taylor to give him money up front so that he could go to a nearby house and purchase crack cocaine.  After some discussion, appellant agreed to get the crack first and return to the vehicle to make the sale.  However, shortly after appellant got out of the vehicle, he came over to the driver's side open window and suddenly jumped at the cash Taylor was holding.  Taylor put the vehicle in reverse as a struggle ensued between the two men.  The gear shift was somehow forced into the drive position, and the truck began moving forward.  Appellant finally gave up the struggle and pulled himself out of the vehicle's window.

{¶ 4} Taylor drove away from the alley and reported via a handheld radio he had hidden under the seat that he "just got robbed."  As he drove, Taylor saw appellant walking between some houses.  He relayed this information to other officers, who were able to apprehend appellant on a porch in the 700 block of Shorb Avenue.

{¶ 5} Appellant was transported to the station, where he agreed to talk to police.  He insisted that Officer Taylor had tried to sell drugs to him, not vice versa, and that he had merely intended to assault Taylor, not rob him.  Appellant also offered to assist in future undercover operations.

{¶ 6} On June 14, 2010, the Stark County Grand Jury indicted appellant on one count of robbery (R.C. 2911.02(A)(3)) and one count of trafficking in cocaine (R.C. 2925.03(A)(1)/(C)(4)(a)).  Appellant entered pleas of not guilty to both charges, and the matter proceeded to a jury trial on July 28–29, 2010.  The jury court found appellant guilty as charged.  The court thereafter sentenced appellant, inter alia, to six years in prison.

*State v. Grier*, 2011 WL 3359995 (Ohio App. Aug. 1, 2011).

Grier timely appealed his conviction and sentence.  Grier asserted four

assignments of error in his appellate brief:

2

Assignment of Error I:

> The appellant was denied his right to effective assistance of counsel.

Assignment of Error II:

> The evidence is insufficient to sustain the conviction and the verdict is against the manifest weight of the evidence.

Assignment of Error III:

> The trial court abused its discretion and denied the appellant his due process rights to a fair trial by failing to grant his motion for a mistrial.

Assignment of Error IV:

> The trial court erred when it abused its discretion in sentencing the appellant to the maximum prison term.

On August 1, 2011, the state appellate court overruled all four assignments of error and affirmed the judgment of the trial court.

Grier timely filed a notice of appeal in the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Grier asserted the first three propositions of law stated above.  On December 21, 2011, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

On February 2, 2012, Grier filed in this court a petition for a federal writ of habeas corpus.  Grier asserts three grounds for relief in his petition:

GROUND ONE:  The petitioner was denied his right to effective assistance of counsel.

Supporting Facts:  Trial counsel's performance was skeletal at best, deficient and prejudiced the appellant by failing to object many times, allowing evidence of character assassination or other bad acts.

GROUND TWO:  The evidence is insufficient to sustain the conviction.

Supporting Facts:  The jury was presented with insufficient evidence to prove

3

appellant/petitioner was guilty of robbery or trafficking in cocaine.

GROUND THREE:  The trial court abused its discretion and denied the petitioner his due process rights to a fair trial by failing to grant his motion for a mistrial.

Supporting Facts:  Comments during trial by [the] state's chief witness and alleged victim suggesting petitioner "wanted to work off some charges" suggesting he was guilty of something was sufficient grounds for mistrial.

Respondent filed an Answer/Return of Writ on April 2, 2012.  Doc. No. 5.  Grier filed a

Traverse on May 3, 2012.  Doc. No. 6.  Thus, the petition is ready for decision.

II

*A. Jurisdiction*

The Court of Common Pleas of Stark County, Ohio sentenced Grier.  Grier filed

his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the

constitutionality of his incarceration under 28 U.S.C. § 2254.

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Stark County is within this court's geographic jurisdiction.

This court has jurisdiction over Grier's petition.

Respondent argues, however, that the court does not have jurisdiction over

Grier's third ground for relief because Grier fails to raise a federal constitutional claim in

his third ground.

In reviewing the decision of state courts, this court does not consider questions of

4

state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers,* 497 U.S. 764 (1990);  see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . .  [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Failure to raise a constitutional issue in a ground for habeas relief deprives a court of subject matter jurisdiction over that claim. *See Lambert v. Davis*, 449 F.3d 774, 778-9 (7th Cir. 2006) (citing 2254(a) and *Estelle*); *Thomas v. Rowland*, 990 F.2d 1260 (9th Cir. 1993).

In his third ground for relief, Grier argues that the trial court abused its discretion and denied Grier his due process rights to a fair trial by failing to grant his motion for a mistrial.  According to Grier, the state's chief witness, detective Zachary Scott ("Scott"), improperly told the jury after Grier's arrest that Grier told him that Grier wanted "to work off some charges."  Transcript of Proceedings ("Tr."), Exh. 15, p. 142.  This, Greer contends, introduced Grier's previous convictions and irreparably prejudiced the jury against him.

An error of state law may serve as a basis for habeas relief when the petitioner was denied fundamental fairness in the trial process.  *Estelle*, 502 U.S. at 67-68; *see also Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  An error of state law so severe as to deny fundamental fairness offends the due process clauses of the Fifth and Fourteenth Amendments.  *See United States v. Agurs*, 427 U.S. 97, 107 (1976); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.").  In the context of a motion to declare a mistrial,

5

a decision regarding a motion to declare a mistrial violates fundamental fairness when the court abuses its "broad discretion" in such matters.  *Renico v. Lett*, ___ U.S. ___, 130 S. Ct. 1855, 1863 (2010).  This is precisely what Grier alleges, and the court shall consider his argument.

Grier alleges a violation of his federal right to due process in his third ground for relief.  Thus, respondent errs in arguing that Grier's third ground for relief does not raise a federal claim.  This court has subject matter jurisdiction over Grier's third ground for relief, and respondent's argument to the contrary is not well-taken.

B.     *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Grier's claims involve legal issues that can be independently resolved without additional factual inquiry.

C.     *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982);

6

*Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Grier has no state remedies available for his claims.  Because no state remedies remain available to him, Grier has exhausted state remedies.

D.    *Procedural default*

Procedural default occurs when a petitioner fails to present fairly his constitutional claims to the highest state court in a federal constitutional context.  *Anderson*, 489 U.S. 4; *Picard*, 404 U.S. 270.  Reasons of federalism and comity

7

generally bar federal habeas corpus review of "contentions of federal law . . .  not

resolved on the merits in the state proceeding due to respondent's failure to raise them

there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the claims is barred
> unless the prisoner can demonstrate cause for the default and actual prejudice
> as a result of the alleged violation of federal law, or demonstrate that failure to
> consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Respondent does not contend that Grier has defaulted any of his grounds for

relief.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered

the standard of review that a federal court must apply when deciding whether to grant a

writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly

established federal law or was based on an unreasonable determination of the facts in

light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006);

*Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by

8

holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.   A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Grier's grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.      *Ground one:   Grier's trial counsel rendered constitutionally ineffective assistance*

Grier contends that his trial counsel rendered ineffective assistance because it was "skeletal at best" and counsel frequently failed to object, thereby allowing "evidence of character assassination or other bad acts" against him without objection. Respondent denies that Grier's trial counsel was ineffective.

The standard for determining whether petitioner's counsel was ineffective is

9

"whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the

10

time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168.  Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Determining whether counsel was ineffective is a mixed question of law and fact. *See Williams*, 529 U.S. 362.  When a federal court reviews the conclusions of a state

11

court regarding counsel's alleged ineffectiveness, both the legal and the factual tests for

determining whether habeas relief is warranted are brought into play. *Id.* at 395-96.

The reviewing court must determine whether the decision of the state court regarding

counsel's alleged ineffectiveness (1) was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding and (2)

resulted in a decision that was contrary to or involved an unreasonable application of a

holding of the Supreme Court. *Id.*

 The state appellate court reviewing Grier's claim of ineffective assistance of

counsel on direct appeal correctly wrote as follows:

> {¶ 13} Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; *i.e.*, whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

> *Opening Statements*

> {¶ 14} Appellant first challenges his trial counsel's performance during opening arguments.  After the trial court afforded both counsel the opportunity for opening statements and the prosecutor had made his remarks, defense counsel spoke to the jury chiefly concerning the burden of proof being on the State and that the verdict must be based entirely on the evidence at trial.  Appellant presently faults his trial counsel for not talking to the jury about the nature of the evidence with which they would be presented or what the defense would contradict.

> {¶ 15} In many cases, it may be prudent for a defense attorney to avoid

presenting a theory of the case to the jury in opening statements, as any subsequent failure to develop and present evidence on such theory would invite the State to later comment on that failure to the jurors.  See *State v. Harris,* Cuyahoga App.No. 87915, 2007–Ohio–526, ¶ 5, citing *State v. Collins,* 89 Ohio St.3d 524, 527, 2000–Ohio–231.  In the case *sub judice*, defense counsel chose to focus on a strategy of challenging whether the State could meet its burden of proof.  Upon review, we do not find trial counsel's performance in this regard fell below an objective standard of reasonable representation.

### Responding to Officer's Testimony

{¶ 16} Appellant secondly challenges the failure of his trial counsel to object to certain portions of the testimony of Detective Taylor.  Appellant takes specific issue with Taylor's testimony that he had alerted other officers over a radio that he had been robbed, and that he declined to work with appellant as a confidential informant because appellant could not be trusted given his conduct during the incidents of May 6, 2010.  Appellant also points to Taylor's testimony about appellant's statements that he was a crack user, that he knew crack dealers, and that he could help the police in catching people connected with the crack trade.

{¶ 17} It is well established that "[c]ompetent counsel may reasonably hesitate to object [to errors] in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial."  *State v. Rogers* (April 14, 1999), Summit App.No. 19176, 1999 WL 239100, citing *State v. Campbell* (1994), 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (internal quotations omitted).  Moreover, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697.  In this instance, given the State's evidence that appellant approached the detective, directed him to drive around city streets, and took him to an apparent crack house before suddenly trying to wrest cash from him, we find overwhelming support for the trafficking and robbery charges, and we are unpersuaded that appellant's case was prejudiced by appellant's trial counsel handling of the detective's testimony.

### Responding to Officer's Qualifications as a Witness

{¶ 18} Finally, appellant contends his trial counsel effectively allowed the State to use Detective Taylor as an expert witness, based on the officer's testimony about crack cocaine being a Schedule II substance, the levels of strength of crack, and its effect on a user.  See Tr. at 155.  However, given that police officers combating the illegal narcotics trade would generally be expected to develop basic familiarity with many of the scientific aspects involved, we again are unpersuaded that appellant's case was prejudiced by appellant's trial counsel

13

handling of the detective's testimony in this regard.

{¶ 19} Appellant's First Assignment of Error is therefore overruled.

*Grier*, 2011 WL 3359995 at *2-*3 (italics added).  Grier contends that the state appellate court misstated the *Strickland* standard for establishing prejudice and improperly used a "sufficiency of the evidence test" in determining whether Grier was prejudiced by trial counsel's performance.

The state appellate court described the *Strickland* standard for prejudice as "a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different." *Id.* at *2.  Grier denies that the petitioner must demonstrate that the outcome would have been different.  In describing the standard for establishing prejudice, the *Strickland* court wrote the following:

> It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . On the other hand, we believe that a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case. . . . *The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.*  A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

*Strickland*, 466 U.S. at 693-95 (emphasis added).  The state appellate court's statement of the standard is a very close paraphrase of the *Strickland* court's, without any difference in meaning.  Thus, Grier's claim that the state appellate court misstated the *Strickland* standard for establishing prejudice is wrong.

Grier also argues that the state appellate court improperly used a "sufficiency of the evidence test" in determining whether Grier was prejudiced by trial counsel's

14

performance.[1]  The proper standard is a "reasonable probability."  The Supreme Court recently described this standard:  "A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . That requires a 'substantial,' not just 'conceivable,' likelihood of a different result."  *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1403 (2011) (quoting *Harrington v. Richter,* 562 U.S. ——, ——, 131 S. Ct. 770, 791 (2011)) (citation omitted).

The state appellate court made two statements in its decision regarding the quantum of evidence determining whether Grier was prejudiced by counsel's alleged errors:

> In this instance, given the State's evidence that appellant approached the detective, directed him to drive around city streets, and took him to an apparent crack house before suddenly trying to wrest cash from him, we find overwhelming support for the trafficking and robbery charges, and we are unpersuaded that appellant's case was prejudiced by appellant's trial counsel handling of the detective's testimony.

and

> [G]iven that police officers combating the illegal narcotics trade would generally be expected to develop basic familiarity with many of the scientific aspects involved, we again are unpersuaded that appellant's case was prejudiced by appellant's trial counsel handling of the detective's testimony in this regard.

*Grier*, 2011 WL 3359995 at *3.  Neither of these statements contradicts the Supreme Court's standard of "reasonable probability."  Because the state appellate court properly stated the applicable standard and because the standard the state appellate court applied does not seem to contradict the correct standard, Grier has not shown that the state appellate court misapplied the "reaonable probability" standard in determining that

---

[1]  Grier does not explain what he means by a "sufficiency of the evidence" test.

15

he was not prejudiced by counsel's alleged errors.

Grier does not challenge the factual findings of the state appellate court with respect to his claim of ineffective assistance of counsel.  In addition, as described above, he fails to demonstrate that the state appellate court's adjudication of his claim resulted in a decision that was contrary to, or involved an unreasonable application of a holding of the Supreme Court.  This court must, therefore, defer to the state appellate court's finding that Grier's counsel did not render ineffective assistance.  For this reason, Grier's first ground for relief should be dismissed.

B.      *Ground two:  Whether there was sufficient evidence to sustain Grier's conviction*

Grier argues in his second ground for relief that the state failed to present the jury with sufficient evidence to prove that Grier was guilty of robbery or trafficking in cocaine. Respondent replied that the evidence was constitutionally sufficient to support Grier's conviction.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that after viewing the evidence in the light most favorable to the prosecution no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000).  This is the standard whether the evidence against the petitioner is direct or circumstantial.  *Spalla v. Foltz,* 788 F.2d 400, 402 (6th Cir. 1986).  It is not necessary that the evidence exclude every reasonable hypothesis

16

except that of guilt. *Holland v. United States,* 348 U.S. 121, 140 (1954).

> The role of the reviewing court in considering such a claim is limited:
>
> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).  "[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence."  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir.1984)).

A claim that the evidence was constitutionally insufficient to support a conviction is a mixed question of law and fact.  *Starr v. Mitchell*, 2000 WL 1529807, at *3 (6th Cir. Oct. 6, 2000).  A petitioner may only obtain relief, therefore, by demonstrating that the state court's decision with respect to the facts or the application of a Supreme Court holding was "objectively unreasonable," thus resulting in a decision that involved an unreasonable application of clearly established federal law.  *Mitchell v. Mason*, 325 F.3d 732, 738 (6th Cir. 2003).  When a federal court examines a claim of insufficient evidence on habeas review to determine if the state court's decision was objectively unreasonable, it must give deference to both the trial court's verdict with respect to the elements of the claim and the appellate court's consideration of the verdict.  *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

In reviewing the assignment of error corresponding to this ground for relief on

17

direct appeal, the state appellate court described the proper standard of review and

then wrote as follows:

> {¶ 22} In regard to the offense of trafficking in drugs, R.C. 2925.03(A)(1) sets forth the essential elements: "No person shall knowingly sell or offer to sell a controlled substance."  See *State v. Moore,* Stark App.No.2008–CA–00228, 2009–Ohio–4958, ¶ 12.  The definition of "sale" has the same meaning as in R.C. 3719 .01.  See, R.C. 2925.01(A).  "'Sale' includes delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee."  R.C. 3719.01(AA).

> {¶ 23} In the case *sub judice*, Detective Taylor recalled that appellant came up to the open window after the officer pulled over to the curb.  Appellant asked what the officer needed, at which point Taylor "asked [appellant] what he had."  Tr. at 130.  Appellant thereupon jumped in the undercover truck and directed Taylor to drive around Canton.  More discussion ensued, and when appellant asked what Taylor needed, the officer said "forty."  Taylor recalled that appellant stated at least twice he would get "crack" for him.  See Tr. at 133, 134.  Appellant at that point directed Taylor to stop at a particular location near Shorb Avenue.

> {¶ 24} In regard to the charge of robbery, R.C. 2911.02(A)(3) reads as follows: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [u]se or threaten the immediate use of force against another."

> {¶ 25} Appellant essentially seeks to downplay the extent of the struggle for the cash and maintains that the officer simply assumed that appellant was reaching for the money.  However, Detective Taylor provided the following details as to what transpired after appellant suddenly re-approached the undercover vehicle:

> {¶ 26} "So if you could picture the door is here, steering wheel, I had the money in this hand here. He jumps across and reaches to get the money.

> {¶ 27} "I threw the vehicle in reverse, floored it, and for some reason just like I guess you would if you were a little kid, I was kind of like playing the keep-away game like oh, no, but I grabbed his left arm with my left arm, and I got the money in this hand, and now we're spinning.  He's halfway in the vehicle and we're trying to go in reverse, but like I said, it's kind of this make-shift parking area, pretty much the back yard of a house.  So we're not really going anywhere.  We're just spinning.

> {¶ 28} "His right arm is right here.  He reaches forward with his right arm to get the money.  At this point I drop the money and grab his right arm, and he's going

18

for, you know, the money.  It drops out of hand.  I grab his hand, and now we go into the gearshift and go straight down into one of the forward gears.  I'm not sure which gear it was but we go forward.

{¶ 29} "Now, I got ahold of his left hand and I got ahold of his right hand, and I'm crossed up with him, and he actually begins to reach down and mess with the keys of the truck trying to shut the truck off.

¶ 30} "We begin to go forward at this time.  You can see him, he's a big guy.  I'm a bigger guy.  We're in the cab of a compact pickup truck tussling over the car keys and this money. He's pretty much laying on top of me.  No one is driving this vehicle.  We're in the backyard of this house. I think, you know, help is going to come.  Unfortunately, help didn't know where I was and they couldn't hear the struggle going on.

{¶ 31} "So now, the situation has kind of gone from bad to worse, and add on to that the fact that I got my full throttle on this vehicle and no one's driving it, no one's steering.

{¶ 32} "It got to the point where I was contemplating using legal force due to the fact that what am I going to do if Mr. Grier gets this vehicle stopped?  What am I going to do if Mr. Grier gets the keys out of this vehicle? * * *."  Tr. at 136–138.

{¶ 33} Upon review, we find the testimony, construed most favorably to the State, amply supported both charges against appellant.  Appellant's claim of insufficiency of the evidence is therefore not well taken.

*Grier*, 2011 WL 3359995 at *4-*5 (italics added).

Grier offers several objections to the state appellate court's decision:  (1) the court stated that the evidence was "ample" to support the charges rather than "sufficient," thus applying the wrong standard; (2) the court failed to conclude that a rational trier of fact could have found the essential elements of trafficking and robbery; and (3) Taylor's testimony failed to offer sufficient evidence to allow a reasonable person to conclude, from Grier's alleged remarks, that Grier offered to sell cocaine.  These objections are not well-taken.

First, the state appellate court concluded, "[T] the testimony, construed most

19

favorably to the State, amply supported both charges against appellant.  Appellant's claim of insufficiency of the evidence is therefore not well taken."  "Ample" means "generous or more than adequate" or "generously sufficient to satisfy a requirement."  *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (Merriam-Webster:  Springfield, MA; 1990).  By describing the evidence against Grier as "ample" to support the charges, the court determined that the evidence was adequate or more than adequate to meet the sufficiency standard.  For this reason, the state appellate court rejected "[a]ppellant's claim of insufficiency of the evidence."  Grier's argument, therefore, is without merit.

Second, the court implicitly concluded that a "rational trier of fact could have found the essential elements of trafficking and robbery."  "Sufficient" is always "sufficient to *something*."  In the case of the standard described in *Jackson*, "sufficient" refers to "sufficient to allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt."  Thus, in finding that the evidence against Grier was sufficient, the court found that there was enough evidence to allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

Third, Grier's assertion that Taylor's testimony failed to offer sufficient evidence to allow a reasonable person to conclude that Grier offered to sell cocaine is not well-taken.  Taylor's testimony averred that when Taylor asked Grier what he had, Grier got into the truck, directed Taylor where to drive, and twice assured Taylor that Grier could get crack for him.  Grier then had Taylor stop at a particular address.  Grier's contention that a reasonable person cannot conclude from these facts that Grier was offering to sell Taylor cocaine is not well-taken.

Greier does not challenge the state appellate court's recital of the relevant facts,

20

and he does not demonstrate that the state appellate court's decision was contrary to, or involved an unreasonable application of a holding of the Supreme Court.  This court, therefore, defers to the state appellate court's finding that Grier's convictions were supported by sufficient evidence.  Grier's second ground for relief should be dismissed.

C.      *Ground three:  Whether the trial court violated Grier's right to due process by declining to declare a mistrial*

Grier argues in his third ground for relief that the trial court abused its discretion and denied Grier his due process right to a fair trial by failing to grant his motion for a mistrial.  Grier contends that Scott's testimony that Grier told him that Grier wanted "to work off some charges" prejudiced the jury against him.  Tr. at 142.  According to Grier, this statement implied that Grier had previous convictions.  Respondent replies that there was no basis for the trial court to declare a mistrial.

A decision regarding declaration of a mistrial violates fundamental fairness only when the court abuses its "broad discretion" in such matters.  *Renico*, ___ U.S. at ___, 130 S. Ct. at 1863.  "[T]rial judges may declare a mistrial 'whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity' for doing so.  *Id.* (quoting *United States v. Perez,* 9 Wheat. 579, 579-80 (1824)).  Nevertheless, "the 'manifest necessity' standard cannot be interpreted literally . . . [A] mistrial is appropriate when there is a 'high degree' of necessity."  *Renico*, ___ U.S. at ___, 130 S. Ct. at 1863 (quoting *Perez,* 9 Wheat. at 580).

The trial court's discretion in granting or denying a motion for a mistrial must be "sound" to pass direct review.  *Renico*, ___ U.S. at ___, 130 S. Ct. at 1863.  ""If the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted

21

to him, the reason for such deference by an appellate court disappears." *Arizona v.*

*Washington,* 434 U.S. 497, 510 (1978).  "[I]f the trial judge acts for reasons completely

unrelated to the trial problem which purports to be the basis for the mistrial ruling, close

appellate scrutiny is appropriate. . . . Similarly, 'if a trial judge acts irrationally or

irresponsibly, . . . his action cannot be condoned." *Renico*, ___ U.S. at ___, 130 S. Ct.

at 1863 (quoting *Washington,* 434 U.S. at 514).

A federal court reviewing a habeas petition must use a standard that gives even

greater deference to the decisions of the trial court than the standard described above:

> It is important at the outset to define the question before us.  That question
> is not whether the trial judge should have declared a mistrial.  It is not even
> whether it was an abuse of discretion for her to have done so—the applicable
> standard on direct review.  The question under the [Antiterrorism and Effective
> Death Penalty Act of 1996 (the "AEDPA")] is instead whether the determination
> of the [state reviewing court] that there was no abuse of discretion was "an
> unreasonable application of . . . clearly established Federal law."  § 2254(d)(1).

*Renico*, ___ U.S. at ___, 130 S. Ct. at 1863.  Absent an unreasonable application of a

Supreme Court holding in the state appellate court's determination that the trial court did

not abuse its discretion, there is no ground for habeas relief.

In the present case, the totality of the circumstances unequivocally demonstrates

that the trial court did not abuse its discretion in refusing to declare a mistrial.  After

Scott testified that Grier told him that Grier wanted "to work off some charges," Grier's

counsel moved for a mistrial, asserting that the court had granted a motion *in limine*

prohibiting testimony regarding Grier's previous convictions and that "working off the

charges" referred to previous convictions.  *See* Tr. at 143-50.  The state responded that

Taylor's testimony related to "working off the charges" in the present case, not with

respect to previous convictions.  After a discussion, the court excused the jury and

permitted a *voir dire* of Taylor regarding Taylor's testimony.  Taylor's *voir dire* convinced the court and the parties that "working off the charges" referred to the charges in the present case, not to previous convictions.  In the presence of the jury, the prosecutor continued the direct examination of Taylor, with Taylor making clear in his testimony that Grier was talking about working off his present charges for trafficking and assault when he offered to "work off the charges" by assisting the police.  Tr. at 150-53.

Under these circumstances, there was no "high degree of necessity" to declare a mistrial.  Grier's basis for declaring a mistrial was that Taylor's testimony introduced Grier's previous convictions to the jury, thus irrevocably prejudicing them against Grier.  But Taylor's testimony made clear that his reference to "charges" referred exclusively to the charges in the case before the jury.  There was no implication that Grier had previously been convicted of anything.  Consequently, there was absolutely no basis for declaring a mistrial.

In addition, the court proceeded prudently in handling the motion for a mistrial.  It excused the jury and permitted the parties to examine the witness to determine the meaning of Taylor's testimony.  Tr. at 146-49.  When both parties were satisfied, the court brought back the jury, and the prosecutor returned to the direct examination of Taylor regarding what he meant by "working off the charges."  Tr. at 150-53.  When the prosecutor finished direct examination on that point, the defense made no objection and did not renew the motion for a mistrial.  Upon cross-examination, defense counsel asked Taylor to explain why the offer to "work off the charges" was not in Taylor's report, but defense counsel did not otherwise return to that issue.  In sum, the trial court did not abuse its discretion in declining to declare a mistrial, and it did not act "for

23

reasons completely unrelated to the trial problem which purports to be the basis for the

mistrial ruling" or act "irrationally or irresponsibly."  *Renico*, ___ U.S. at ___, 130 S. Ct.

at 1863.

In reviewing the decision of the trial court, the state appellate court wrote the

following:

> {¶ 39} The specific incident at issue concerns Detective Taylor's testimony that
> appellant, while being interviewed at the station after his arrest, told officers he
> would be willing to "work off" some of the charges.  Tr. at 142.  Appellant's trial
> counsel objected at that point and moved for a mistrial on the basis that the jury
> was given the impression that appellant had a record of other charges pending
> against him.  Tr. at 143.

> {¶ 40} The record reflects that the trial court conducted a voir dire of Detective
> Taylor, outside the presence of the jury, during which Taylor clarified that
> appellant was talking about the robbery and trafficking charges that had just
> occurred.  On cross-examination during this voir dire, defense counsel asked:
> "Maybe I was wrong but I thought your response when the Jury was still here to
> that question was that Mr. Grier offered to work off previous charges or prior
> charges."  Tr. at 148.  Taylor responded: "No, sir. Just the charges that he was
> going to be charged with that day.  It was the robbery and the trafficking in
> cocaine." *Id* .  After the voir dire, Taylor repeated this testimony for the jury to
> review.  Tr. at 150–152.

> {¶ 41} Upon review of the aforesaid, we hold the trial court's denial of the motion
> for mistrial was not arbitrary, unreasonable or unconscionable.

*Grier*, 2011 WL 3359995 at *6.

Grier responds that the prejudicial effect of the mention of Grier's past

convictions was not cured by Taylor's later testimony.  Because that testimony

irreparably tainted the jury, Grier asserts, the trial court should have declared a mistrial,

and the state appellate court's finding that the trial court did not abuse its discretion was

unreasonable.  That argument is not well-taken.  The trial court's denial of the motion,

based on Taylor's testimony regarding what Grier meant by "charges," was not

24

"arbitrary, unreasonable or unconscionable," and the state appellate court was entirely reasonable in finding that the trial court had not abused its discretion in denying the motion for a mistrial.[2]

Grier does not dispute the accuracy of the state appellate court's summary of the relevant facts, nor does he demonstrate that the state appellate court's finding that the trial court did not abuse its discretion was an unreasonable application of clearly established federal law. The court, therefore, defers to the state appellate court's finding that the trial court did not abuse its discretion in denying Grier's motion for a mistrial. For this reason, Grier's third ground for relief is without merit and should be dismissed.

IV.

For the reasons given above, Grier's grounds for relief should be dismissed as without merit.

Date: September 20, 2012                    /s/ Nancy A. Vecchiarelli
                                            United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981). See also _Thomas v. Arn_, 474 U.S. 140 (1985), _reh'g denied_, 474 U.S. 1111.**

---

[2] It is worth noting that defense counsel failed to renew the motion to declare a mistrial after the court addressed the defense's concerns. This implies that the defense was satisfied that the problem had been resolved. In any case, by failing to renew the motion to dismiss, the defense defaulted denial of the motion as a ground for habeas relief.